UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 17-25190-A-7 |
| CARL JEFFREY KAUT, | |
| Debtor. | |
| PATRICIA McKINZIE, | |
| Plaintiff, | Adv. No. 17-2204 |
| vs. | |
| CARL JEFFREY KAUT, | |
| Defendant. | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This proceeding was tried before the court sitting without a jury on October 18, 2018 beginning at 9:00 a.m.  The plaintiff, Patricia McKinzie, appeared with her attorney, Luke Garcia, and the defendant, Carl Jeffrey Kaut, appeared on his own behalf.  At the conclusion of the trial, the parties were given the opportunity to file closing briefs.  Those briefs have been

filed.  After considering their evidence and briefs, the court now makes its findings of fact and conclusions of law.

This is an action to determine the dischargeability of a debt.  It is a core proceeding in which this court may enter a final judgment.  28 U.S.C. § 157(b)(2)(I).

For the reasons explained below, a separate judgment will be entered in favor of the plaintiff.

<u>Findings of Fact</u>

1.    In April 1999, the plaintiff and her now deceased husband purchased residential real property located at 1037 Houston Circle in Folsom, California.  The defendant acted as their real estate agent in connection with the purchase.

2.    After purchasing the property, the plaintiff's husband's health deteriorated rapidly and so they decided to rent the property rather than live in it as they had originally planned.

3.    As it turned out, the defendant was looking for a home to rent.  The plaintiff and her husband agreed to rent the Houston Circle home to the defendant.

4.    The plaintiff's husband passed away in August 2001.

5.    The defendant continued to rent the home after the husband's death, but in early 2002 he asked the plaintiff if she would be willing to sell him the home.  The defendant disclosed that he would not be able to qualify for a home loan due to an earlier bankruptcy[1] and bad credit.  But, if the plaintiff were

---

[1] This bankruptcy case was filed in this court on September 6, 1989, as Case No. 89-25973.  It was a chapter 13 case.

willing, he would give her a note for $310,000 which would bear interest at the rate of 7%, be amortized over 30 years, require a monthly principal and interest payment of $2,062.44 beginning in May 2002, and become all due and payable in April 2006.  The note would be secured by the Houston Circle home.[2]

6.    The plaintiff agreed to these terms and sold the home to the defendant in a transaction that closed on or about March 15, 2002.

7.    As confirmed by the closing statement, Defendant's Exhibit A, no commissions were paid in connection with this transaction.  Hence, the defendant did not act as a real estate agent in connection with the sale.  Nonetheless, the plaintiff relied upon the defendant to arrange for the preparation of the note and the deed of trust, to select the escrow and title company, and close the sale.

8.    During the time he rented the home, the defendant sometimes paid late.  But, he eventually paid all of the rent that came due from June 1999 through March 2002.  After the purchase, his note payments from March 2002 through 2004 followed a similar pattern – sometimes the defendant paid late but he eventually caught up.

9.    Then, around December 2004, the defendant informed the plaintiff that he wanted to use the Houston Circle home as collateral for a new loan in order to raise money to pay approximately $100,000 in delinquent taxes.  He offered to use a

---

[2] To calculate loan balances, these loan terms and the payments indicated by the evidence were input into a Texas Instruments BA-35 financial calculator by the court.

portion of the new loan to reduce the principal owed to the plaintiff.  The balance of the plaintiff's loan would continue to be secured by a senior lien on the property.

10.  The plaintiff agreed and the defendant borrowed $412,500 from First Horizon Loan Corporation.  Contrary to the representation to the plaintiff, the new loan, not the plaintiff's loan, was secured by a first deed of trust on the property.

11.  Not only was the plaintiff's loan no longer secured by a senior lien on the property, it ceased to be secured at all. In connection with the refinance, the title company/escrow selected by the defendant prepared a Full Reconveyance which the plaintiff signed without understanding that it meant she was relinquishing her deed of trust.  The plaintiff testified that even though the defendant was not acting as her real estate agent in this transaction, she relied upon his expertise and his promise that her note would continue to be secured by a senior lien.

12.  The defendant concedes that he told the plaintiff her note would continue to be secured by the property.  However, he maintains that he did not intentionally mislead the plaintiff. Rather, he blames the title company/escrow for having the plaintiff reconvey her deed of trust.  It, not he, made a mistake.

13.  The court does not believe the defendant.  The court finds that he represented to the plaintiff that her note would continue to be secured by a senior security interest in the Houston Circle home knowing that this was not true.

14.   First, it is doubtful in the extreme that a new lender making a loan of more than $400,000 on a home that sold for $310,000 just two years earlier would agree to accept a junior security interest.  A new lender like First Horizon would insist on being secured by a senior lien.  As a real estate professional, the defendant knew this.

15.   Second, the defendant made the arrangements at the title company for all of the documents necessary to obtain the new loan, including those signed by the plaintiff.  He knew the significance of the reconveyance that the plaintiff was asked to sign.  And, if he was unaware that the plaintiff had signed one, he would have been informed of the reconveyance in his closing documents and title policy.  Yet, there is nothing in the record suggesting he attempted to rectify any such "error."  He allowed the escrow to close even though he knew the plaintiff was losing her security, contrary to his representation to her.

16.   Third, documents filed by the defendant in connection with a motion for summary judgment indicate that he exploited the reconveyance of the plaintiff's security interest.  The defendant filed on February 16, 2018, a "property detail" that included a historical summary of title information concerning the Houston Circle home.  See Docket 19.  It indicates that on March 8, 2005 and September 28, 2005 (both of these dates are after the closing of the $412,500 First Horizon loan), the defendant refinanced loans of $36,495 and $100,000 that were secured by the property.  These transactions, like the $412,500 First Horizon loan, would not have been possible without the plaintiff's participation if her loan had continued to be secured by the property.  There is

nothing in the record indicating that she was aware of, consented to, or subordinated her security interest to these additional loans.

17.  Fourth, the defendant was well aware of the plaintiff's precarious financial position.  He knew she was recently widowed, that she was caring for young children, and that she had sold the Houston Circle home to the defendant in order to obtain a steady source of reliable income.  He knew she would not jeopardize this income stream by agreeing to subordinate her note to a large, new mortgage nor would she knowingly relinquish the security for the note.

18.  Fifth, the defendant's own financial condition at the time of the refinance was precarious.  By his own admission to the plaintiff, he had bad credit and a prior bankruptcy.  He owed approximately $100,000 in delinquent taxes.  Also, he was in the process of divorcing his wife and was about to become liable for support payments to her.  <u>See</u> Defendant's Exhibit C.  Neither or these obligations would be dischargeable in a bankruptcy case. The new loan permitted him to pay the taxes and other obligations and put almost $90,000 in the defendant's pocket to deal with his divorce.  <u>See</u> ¶ 19 below.  The defendant had a significant incentive to induce the plaintiff to allow the refinance even if it meant she would lose her security interest.

19.  With the new loan, the defendant made a principal payment of $151,850 to the plaintiff, plus $757.17 for interest accruing in January 2005, paid $163,850.87 to satisfy a variety of bills, including approximately $100,000 in taxes, and $6,770.55 in loan fees and escrow and title charges.  The

balance, $89,271.41, was paid to the defendant.  <u>See</u> Defendant's Exhibit B.

20.  By the time this escrow closed, the plaintiff had received 32 monthly payments of $2,064.44 (May 2002 through December 2004), the interest accruing in January 2005, $757.17, and a principal payment of $151,850.  These payments reduced the principal amount of the defendant's obligation from $310,000 to $149,238.69.

21.  After the close of escrow, the defendant's finances did not improve.  His divorce and a health problem in 2006 caused him to default on both the First Horizon loan and the obligation to the plaintiff.

22.  Because of the default, First Horizon began a nonjudicial foreclosure which resulted in a trustee's sale on April 23, 2007.

23.  The plaintiff was unaware of this foreclosure.  Because she had reconveyed her deed of trust, she received no notice of it and the defendant did not warn her that he had defaulted. Even though the defendant ceased making regular monthly payments to the plaintiff around June 2006, this was not unusual.  As noted above, the defendant frequently made late payments, both while renting the property and after his purchase of the home. And, the defendant eventually paid to the plaintiff all of the monthly installments due through October 2007.

24.  After the close of the First Horizon loan escrow in January 2005, the plaintiff received 32 additional monthly installments of $2,062.44 through October 2007.  This reduced the principal amount owed by the defendant from $149,238.69 to

$107,441.74.

25.  When no further payments were made, and because the plaintiff's note matured in April 2006, the plaintiff mailed a demand letter to the defendant in November 2007.  When her letter was forwarded to the defendant at a new address, the plaintiff discovered that he was no longer residing in the Houston Circle home.

26.  This discovery, and the defendant's failure to make any further payments, prompted the plaintiff to contact a title company in December 2007 to initiate a foreclosure.  This led to her further discovery that her deed of trust had been reconveyed in January 2005 and that First Horizon had already foreclosed.

27.  Left without security, the plaintiff sued the defendant in state court on December 21, 2011.  The complaint in <u>McKinzie v. Kaut</u>, Sacramento Superior Court Case No. 34-2011-00115997, includes seven claims for relief all based on the failure to pay the $310,000 in full.  Some claims for relief sound in contract and seek payment of the promissory note.  The others are tort claims complaining that the defendant defrauded the plaintiff when he induced her to reconvey the deed of trust securing the note.

28.  The defendant defaulted in the state court action.  In her application for a default judgment, the plaintiff demanded the entire $310,000, as well as $930,000 in exemplary damages. In other words, the plaintiff demanded the entire $310,000 original principal and did not inform the state court of any payments made by the defendant.

29.  A default judgment was entered on July 30, 2014.  It

awarded the $310,000 (plus prejudgment interest of $121,815.09 and $6,000 in attorney's fees) demanded by the plaintiff but it declined to award any punitive or exemplary damages. This is acknowledged in the plaintiff's post-trial brief filed November 2, 2018.

30. Given that the complaint includes tort and contract claims, given the absence of an award of punitive damages, and given that the state court made no findings of fact and conclusions of law, the legal basis for the state court's default judgment cannot be ascertained from the record given to this court.

31. Finally, given the failure of the state court to credit the defendant with his substantial payments, the award of $310,000 is incorrect. The principal had been reduced to $107,441.74. And, interest at the 7% note rate on $107,441.74, rather than $310,000, for the 80-month period from November 2007 through the date the state court judgment was entered, July 30, 2014, was $50,730.16, not $121,815.09.

32. To the extent any of the conclusions of law below are findings of fact, they are incorporated by reference as findings of fact.

## Conclusions of Law

33. To the extent any of the foregoing findings of fact are conclusions of law, they are incorporated by reference as conclusions of law.

34. Issue preclusion applies in an action to determine the dischargeability of debt. <u>Grogan v. Garner</u>, 498 U.S. 279, 284

(1991).

35.   Because the judgment entered in favor of the plaintiff and against the defendant was entered under California law, this court must apply California's rules concerning issue preclusion. 28 U.S.C. § 1738; Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir. 2003).

36.   Under California law, issue preclusion applies if the identical issue was actually litigated in the earlier proceeding, the issue was necessary to a final judgment on the merits, and the party being precluded from relitigating the issue was a party in the prior case.   Plyam v. Precision Dev., L.L.C. (In re Plyam), 530 B.R. 456, 462 (B.A.P. 9th Cir. 2015).

37.   The plaintiff maintains that her state court judgment establishes that the defendant defrauded her and that he owes her $310,000, plus prejudgment interest of $121,815.09, attorney's fees of $6,000, as well as interest that has accrued since entry of the judgment.

38.   While this court agrees that the state court determined that the defendant was indebted to the plaintiff, the application of issue preclusion as to the amount of that debt is discretionary rather than automatic, otherwise manifest injustice would result.   See Restatement (Second) of Judgments § 28(2); Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912, 919-20 (9th Cir. 2001).   As explained above, the plaintiff admits that the defendant made substantial payments to her and reduced the principal of the debt from $310,000 to $107,441.74.   And, even these payments predate the state court judgment, the state court did not credit the defendant with them.

39.   The record in this court establishes that the plaintiff is entitled only to $107,441.74 plus interest at the rate of 7%. When the state court judgment was entered on July 30, 2014, interest of $50,730.16 had accumulated.  If the debt is nondischargeable, the plaintiff is entitled to additional interest at the same rate from July 30, 2014.

40.   The argument made by the plaintiff in her post trial brief that the state court's award in excess of the balance due under the note was some other category of damages is not supported by the record.  The only other category requested was punitive damages and the plaintiff admits that the state court expressly refused to award punitive damages.

41.   Nor does the state court judgment establish that the defendant defrauded the plaintiff.  Its earlier judgment does not necessarily establish fraud.  As noted above, the state court made no findings or conclusions in support of the judgment, it awarded no punitive damages, and the complaint included contract claims that could be the basis of its judgment.  Given this, the plaintiff has not carried the burden of proving all elements necessary to establish the applicability of issue preclusion. Kelly v. Okoye Iin re Kelly), 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995).  The defendant's alleged fraud was not essential to the state court's judgment.

42.   Nonetheless, whether or not the defendant defrauded the plaintiff may be litigated in this case.  See Brown v. Felsen, 442 U.S. 127 (1979).

43.   11 U.S.C. § 523(a)(2) provides that an individual is not discharged "from any debt for money . . . , to the extent

obtained by - (A) false pretenses, a false representation, or
actual fraud, other than a statement respecting the debtor's or
an insider's financial condition. . . . "

44.  11 U.S.C. § 523(a)(2)(A) requires a showing that: (1)
the defendant made a representation; (2) known to be false when
made; (3) with the intent and purpose of deceiving the plaintiff;
(4) upon which the plaintiff justifiably relied; and (5) causing
damage to the plaintiff.  <u>Younie v. Gonya (In re Younie)</u>, 211
B.R. 367, 373 (B.A.P. 9th Cir. 1997); <u>see also</u> <u>Providian Bancorp.</u>
<u>(In re Bixel)</u>, 215 B.R. 772, 776-77 (Bankr. S.D. Cal. 1997).

45.  As recounted in paragraphs 12 through 18 above, the
defendant represented to the plaintiff that if she permitted him
to refinance the property, her note would continue to be secured
by a senior lien on the property.  This was false, the defendant
knew it was false, and he made the representation to induce the
plaintiff to relinquish her security interest.  As a result of
the plaintiff's justifiable reliance on his representation, the
plaintiff's note became unsecured and she was left without
recourse to substantial real property collateral that would have
made her whole.

46.  The debt, as determined by this court, is
nondischargeable pursuant to section 523(a)(2)(A).  A separate
judgment will be entered.

Dated: January 14, 2019

By the Court

Michael S. McManus
United States Bankruptcy Judge

12

# Instructions to Clerk of Court
## Service List – Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC.


Patricia McKinzie

Carl Jeffrey Kaut
1725 Bamboo Street
Roseville CA 95747

Lucas B. Garcia
251 Auburn Ravine Rd #107
Auburn CA 95603